# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4766 | **DATE** | 5/5/2000 |
| **CASE TITLE** | Perry Scott vs. Rodney L. Edinburg, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Plaintiff's motion to compel production of certain records relating to Mr. Edinburg's psychological evaluation [19-1] is granted. The parties are to submit to the Court an agreed protective order consistent with these requirements by the close of business on 5/12/00.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAY 0 8 2000 date docketed |
| | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | 5/8/2000 date mailed notice |
| | courtroom deputy's initials SH/JV | 00 MAY -8 AM 11:31 Date/time received in central Clerk's Office | SH mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PERRY L. SCOTT, SR., individually )
and as Special Administrator of the Estate )
of PHILLIP SCOTT, deceased, *et al.*, )
)
Plaintiffs, )
) No. 99 C 4766
vs. )
) Magistrate Judge Schenkier
RODNEY L. EDINBURG and )
VILLAGE OF GLENWOOD, a )
municipal corporation, )
)
Defendants. )

DOCKETED
MAY 08 2000

## MEMORANDUM OPINION AND ORDER

This case arises out of the May 17, 1999 shooting death of Phillip Scott at the hand of defendant Rodney L. Edinburg, who at the time was a member of the Village of Glenwood Police Department. Plaintiffs, who are the administrator of Phillip Scott's estate and various surviving family members, have filed this action against Mr. Edinburg and the Village of Glenwood alleging common law actions for survival (Count I) and wrongful death (Count II). Plaintiffs also allege a federal cause of action against Mr. Edinburg alone under 42 U.S.C. § 1983 (Count III).

This matter comes before the Court on plaintiffs' motion to compel production of five documents concerning psychological evaluation that Mr. Edinburg underwent after the shooting, at the direction of the Chief of Police for the Village of Glenwood Police Department [doc. # 19-1].[1] Defendants assert that the documents are privileged and that even if not privileged, the documents are not discoverable under Fed. R. Civ. P. 26(b)(1), because the information contained in them does

---

[1] This request is part of a motion to compel that also sought production of other categories of documents. In a ruling dated April 27, 2000, the Court ruled on the other aspects of this motion to compel, leaving for decision only this remaining dispute concerning the records of Mr. Edinburg's post-accident psychological evaluation.

not appear "reasonably calculated to lead to the discovery of admissible evidence." For their part, plaintiffs assert that the documents are not privileged because there was no expectation of privacy in them to begin with; that any privilege has been waived because the contents of the evaluation was disclosed to a third party (the Village police chief); and that the documents are discoverable because they are likely to contain highly relevant information.

On April 27, 2000, the Court ordered defendants to produce the five documents at issue for an *in camera* review, which they have done. In addition, all the parties accepted the Court's invitation to submit any supplemental argument they wished to offer on this issue by May 3, 2000. The Court has conducted an *in camera* review of these documents and has reviewed the supplemental briefs offered by the parties. Based on its review of the documents and the authorities, the Court concludes that the documents are not privileged, and that they do indeed contain discoverable information. Accordingly, for the reasons set forth more fully below, the motion to compel production of these records is granted.

I.

In *Jaffee v. Redmond*, 518 U.S. 1, 141 (1996), the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."[2] *Jaffee* involved a fatal shooting of a man by a police officer, and the discoverability *vel non* of records concerning some fifty counseling sessions that the officer had with a clinical social worker after the shooting. The Supreme Court decision in *Jaffee* upheld the Seventh Circuit's

---

[2]Defendants have asserted that the communications are privileged under Illinois state law. *See* 740 ILCS 110/1 *et seq.* However, because this case presents, among other things, a Section 1983 claim based on federal law, the question of privilege is governed by federal common law. *See Jaffee*, 518 U.S. at 5 (applying federal common law of privilege where the case presented both a Section 1983 claim and a state law claim under the wrongful death statute).

2

recognition of a psychotherapist-patient privilege (and, indeed, strengthened that privilege by holding it is not subject to a balancing test based on the need for the protected information), and upheld the decision that the privilege protected the records from compelled production.

Significantly, there is no indication in the *Jaffee* decision that the records of those counseling sessions ever were disclosed to members of the police force or other third parties, or that the defendant officer had authorized such disclosure. The court of appeals opinion in *Jaffee* suggests the contrary, as reflected by the observation that "the officer's ability, through counseling, to work out the pain and anguish undoubtedly caused by Alan's death in all probability depended to a great deal upon her trust and confidence in her counselor . . ." *Jaffee v. Redmond*, 51 F.3d 1346, 1358 (7th Cir. 1995). *See also Kamper v. Gray*, 182 F.R.D. 597, 599 (E.D. Mo. 1998)(stating that in *Jaffee*, it appears that "no report regarding these [counseling] sessions were submitted by the counselor to third parties"); *Barrett v. Vojtas*, 182 F.R.D. 177, 179 (W.D. Pa. 1998)(stating that in *Jaffee* "no reports were submitted by the counselor to a third party").

Other courts also have relied on the psychotherapist patient privilege to bar compelled production of psychiatric records of officers in police shootings and other cases, where the confidential communications to the psychotherapist were not disclosed to third parties. In *Caver v. City of Trenton*, Civ. A. 99-1636, 2000 WL 279901 (D.N.J. Mar. 10, 2000), the court held that the psychotherapist patient privilege barred production of psychological evaluation records of one of the defendants. The court explained that the defendant "clearly had an expectation of confidentiality," based on being "reassured that the psychological records and reports would be kept strictly confidential, and would not be disclosed to the City of Trenton personnel." *Id.* at 9. The court rejected the argument that the privilege did not apply because the purpose of the psychological evaluation was not for treatment but for diagnosis of any mental illness or emotional disorder that

would render the defendant unfit to be a police officer, reasoning that there is no "bright line distinction" between psychiatric counseling for purposes of treatment rather than diagnosis. *Id.* Moreover, the Court found that there was no waiver of the privilege, because the only information provided by the psychologist to the police department was a one-word statement of "pass" or "fail" with respect to fitness for duty; the psychological evaluation reports themselves were kept "completely confidential." *Id.* at *10.

To the same effect is *Williams v. District of Columbia*, Civ. A. 96-0200, 1997 WL 224921 (D.D.C. Apr. 25, 1997). In that case, which also involved a fatal police shooting, the plaintiffs sought to compel production of records concerning consultations by the defendant officer with a psychiatrist after the shooting. The court found that the privilege applied even though the consultation was to determine fitness to return to active duty, rather than for "treatment." 1997 WL 224921, *2. In addition, the court found that there was no waiver of the privilege, because the only information communicated by the psychiatrist to the police department was "a 'Yes or No' recommendation regarding whether the officer should return to active duty." *Id.*

By contrast, in *Siegfried v. Easton*, 146 F.R.D. 98 (E.D. Pa. 1992), a pre-*Jaffee* decision that recognized the psychotherapist-patient privilege, the court compelled production of documents relating to the psychological or psychiatric evaluation or treatment of one of the defendant officers in a police brutality case. The particular psychiatric records at issue were various psychological records compiled when the defendant officer interviewed for a position with the police department, which were then supplied to the police department. On those facts, the court found there was no expectation of confidentiality between the psychologist and the defendant officer: "[i]t is obvious from this description that when an applicant consults with [the] psychologist, he understands that the psychologist will be reporting back to the police department." 146 F.R.D. at 101. *See also*

4

*Kamper*, 182 F.R.D. at 599 (reports of post-shooting counseling sessions attended by police officer held non-privileged, since the officer "was aware that his evaluations would be reported to his employer"); *Barrett*, 182 F.R.D. at 179 (post-shooting counseling reports regarding police officer held non-privileged where the reports were submitted to public officials).

The consistent thread that runs through all of these cases is that the threshold requirement for the existence of the psychotherapist patient privilege is that there be an expectation by the patient that the communications with the psychotherapist will remain with the psychotherapist and will not be disclosed to others. Indeed, in recognizing that privilege, the Supreme Court emphasized that, "[l]ike the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'" *Jaffee* at 10 (*quoting Trammel v. United States*, 445 U.S. 40, 51 (1980)); *see also Kamper*, 182 F.R.D. at 599 ("[t]he psychotherapist-patient privilege cannot be invoked . . . in the absence of intended confidential communications"); *Barrett*, 182 F.R.D. at 179 ("[t]he Court's reasoning [in *Jaffee*] clearly shows that confidentiality is the foundation upon which the psychotherapist-patient privilege rests").

That expectation of confidentiality is absent in this case. The documents produced for *in camera* review reveal that prior to the onset of his discussions with the psychologist, Mr. Edinburg was informed that "the interviews with him and the testing results would be reviewed with [the Village police chief] as they pertained to the referral questions." *See* Opinion: Fitness for Duty, dated August 5, 1999, at page 3. Mr. Edinburg was further informed that the psychologist's "written report and oral testimony might be subpoenaed in a civil litigation lawsuit," and the psychologist reported that Mr. Edinburg reflected his understanding of that fact: at various times during the interview, he refrained from making certain statements with the explanation that "[t]his is not confidential." *Id.*

5

Those statements make it clear that Mr. Edinburg embarked on the consultation fully aware that what he said would not be confidential, and would be shared with others. In fact, it was made clear to him that the information would not only be shared with the Village police chief, but also might be produced in civil litigation. And, in fact, the evaluation *was* shared with others: not only with the police chief, but also with the Village of Glenwood Mayor and members of the board of Trustees (*see* Pls.' 05/03/00 Mem., Ex. D). Because the defendants have failed to establish the expectation of confidentiality that is the prerequisite for the existence of the psychotherapist-patient privilege, the privilege was never established. *See Kamper*, 182 F.R.D. at 598. And, even if it was, the disclosures to third parties waived any privilege. *See Jaffee*, 518 U.S. at 15 n.14 ("[l]ike other testimonial privileges, the patient may of course waive the protection" of the psychotherapist-patient privilege). In either event, the documents are not privileged from production.

## II.

Defendants also argue that the reports are privileged under an "official/executive" privilege or a "deliberative privilege." The Court disagrees.

As to an "official/executive privilege," which the Court believes is more accurately denominated as an "official information" privilege, defendants have failed to establish the basis for asserting that privilege under the factors set forth in *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y. 1988), and *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987). In particular, the Court rejects the proposition urged by defendants that the privilege should be applied here because disclosure of the evaluation would "chill" police departments from thoroughly investigating police shootings and from sending police officers involved in such shootings for counseling. The Court believes that when a police shooting occurs, police departments and municipalities have more than ample

6

incentive – even in the face of potential disclosure in litigation – to take the steps necessary to ensure that the involved police officers are fit for duty. In light of the strong policy favoring broad discovery, a defendant's "case for restricted disclosure must be extremely persuasive." *King*, 121 F.R.D. at 195. Defendants have not made out such a case here.

The assertion of a deliberative privilege fares no better. Illinois does not recognize such a privilege, *People v. Birkett*, 705 N.E.2d 48 (Ill. 1998), and this Court is wary about extending such a protection as a matter of federal common law. *See Jaffee*, 518 U.S. at 12-13 (the decision of a state as to whether to extend a privilege "bear[s] on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one"). This Court's prior application of a deliberative privilege in *Parmalee v. True*, 93 C 7362, 1999 WL 104713, *1 (N.D. Ill. Feb. 25, 1999), is of no assistance to defendants, as that decision involved an application not of federal common law, but of the Federal Freedom of Information Act. In any event, such a privilege would not bar production of the evaluation, since that document does not reflect the Village's deliberative process. Rather, it contains factual matter available to the Village to use (or not) in its decisional process, and such factual information is not protected by a deliberative process privilege. *Parmalee*, 1999 WL 104713, at *2.

### III.

Since the records of Mr. Edinburg's psychological evaluation are not privileged, they are producible if they fall within the broad scope of discovery afforded by Rule 26. Rule 26(b)(1) permits discovery into "*any* matter, not privileged, which is relevant to the subject matter involved in the pending action, . . ." (emphasis added). Discoverable material is not limited to that which would be admissible at trial, but also includes non-privileged information that "appears reasonably

7

calculated to lead to the discovery of admissible evidence." *See Craig v. Exxon Corp.*, 97 C 8936, 1998 WL 850812, *1 (N.D. Ill., Dec. 2, 1998). Rule 26 vests this Court with broad discretion in determining the scope of discovery, which the Court exercises mindful that the standard for discovery under Rule 26(b)(1) is "widely recognized as one that is necessarily broad in its scope in order to allow the parties essentially equal access to the operative facts." *Id. (quoting Onwuku v. Federal Express Corp.*, 178 F.R.D. 508, 516 (D. Minn. 1997)).

The documents at issue here plainly meet this liberal standard of discoverability. The psychological evaluation itself contains information revealed by Mr. Edinburg concerning his military and employment history prior to joining the Village of Glenwood police force, and other background information that reasonably may lead to admissible evidence. In addition, the report also relates information (obtained from records, Mr. Edinburg, and other employees of the police department) concerning Mr. Edinburg's performance during his training program with the Glenwood Police Department, including events that occurred within a few months of the incident in question. The report contains information related by Mr. Edinburg concerning the circumstances surrounding the shooting itself, as well as references to statements by his superiors in the police department about that event. And, there are the results of the psychological testing itself, as well as the psychologist's evaluation of those results. All of this information may lead to the discovery of admissible evidence concerning what happened in connection with the shooting, and why.

The other four documents also are discoverable. The letters dated May 18 and June 3, 1999, as well as the consent form dated June 14, 1999, all show the manner in which the psychological consultation was arranged, and are discoverable to show the purpose of the consultation and what was done to arrange it. The remaining document, an invoice by the psychologist for the services rendered, shows the amount of time spent by the psychologist in preparing the evaluation, what she

8

did in connection with the evaluation, and the cost of the evaluation. Those matters also may lead to the discovery of admissible evidence and thus must be produced.

**IV.**

To say that the documents concerning Mr. Edinburg's psychological consultation are non-privileged and discoverable, of course, is not to say that plaintiffs are entitled to disseminate them to the world. The records contain personal and sensitive information that is not generally available to the public, and that Mr. Edinburg is entitled to keep that way during discovery. Accordingly, the Court will require that production of these records be subject to a protective order that prohibits their use for any purpose other than the prosecution of this lawsuit; allows them to be reviewed only by the attorneys of record for plaintiffs (including the law firm's support personnel and any experts retained for this lawsuit); and that prohibits the documents or information in them from being disseminated in any form or fashion to other persons, including the named plaintiffs in this case.

**CONCLUSION**

For the foregoing reasons, plaintiffs' amended motion to compel production of certain records relating to Mr. Edinburg's psychological evaluation (doc. # 19-1) is granted. The parties are to submit to the Court an agreed protective order consistent with these requirements by the close of business on May 12, 2000. However, the documents shall be produced to plaintiffs' counsel by the

close of business on May 9, 2000; pending entry of the written protective order, plaintiffs' counsel shall not disclose the documents or any information from them to any other persons.

ENTER:

*[signature]*

SIDNEY I. SCHENKIER
United States Magistrate Judge

**Dated: May 5, 2000**